May it please the court, my name is Michael Mullins and I'm here on behalf of West Virginia State Trooper Leland Price. We're here today appealing the denial of summary judgment based upon a ruling by the circuit or the district court that Leland Price was not entitled to qualified immunity. It's an interlocutory appeal. We're not disputing the facts in this case. We're accepting the facts as determined by Judge Copenhaver. But we believe that Judge Copenhaver erred in two ways. First of all, we believe that the district court erred when it guessed at potential or possible subjective motivations that Trooper Price may have had instead of focusing on the objective facts that were before the court. And secondly, we believe that the court erred in determining that the conduct at issue was clearly established as unconstitutional at the time. If the court doesn't care, I'll start with the qualified immunity issue. Under qualified immunity, Trooper Price and any law enforcement officer is only required to know what law has been previously established. And it has to be something that a reasonable officer would understand. And the court, in this court, passed a decision years ago that is somewhat related to the incident at hand. That's the Waterman case. The Waterman case involved a traffic stop or an attempted traffic stop and a flight by a person. Ultimately, the suspect tried to run a police officer off the road. And several police officers were in front of that suspect and with their guns trying to stop the suspect. And the suspect came toward those police officers. And while the suspect was coming towards those police officers, the police officers fired at Mr. Waterman. They fired several shots at Mr. Waterman, all of which the Fourth Circuit held were constitutional. Then, as Mr. Waterman passed the police officers, the police officers turned and fired at Mr. Waterman as he was fleeing down the road where there was no other police officers and no other individuals in danger. And what the Waterman court stood for, the Waterman court decided that all of the shots were entitled to qualified immunity. That the first shots, as the police officers were coming toward the police officers, were constitutional. And that the police officers' shots after the person had fled were unconstitutional, but a police officer wouldn't have known that. So, Waterman stands for the position that once a vehicle has passed the law enforcement officers and the danger is over, that the law enforcement officers can no longer shoot at that individual. But that's not the situation we had in the instant case. As the court decided, the district court, and as Mr. Cron's counsel pointed out, when my client shot at Mr. Cron, the entirety of his truck had not passed my client. My client was standing in a fatal triangle with his vehicle, the trooper's vehicle behind him, Mr. Cron's vehicle pointing toward him, several gas pumps to the left of him, a diesel pump behind Mr. Cron that Mr. Cron had actually rammed trying to get away, and some innocent bystanders. Where did these shots hit the car? The first shot didn't hit the car. Well, where did the next one hit the car? The second shot went through the passenger side window and hit Mr. Cron. Right. It went through the passenger side window, so you don't contest that? I do not contest that it went through the passenger side window, but I do contest that my client was out of the zone of danger at the time that the second shot. He was the driver. I'm sorry? Mr. Cron was the driver, yes. Mr. Cron was the driver that refused to Had to go through the passenger side window and come across the vehicle if he's under the wheel. Well, Mr. Cron, per everyone, it's undisputed, was actually leaning over. When the first shot was fired, Mr. Cron, he had an old-style pickup truck with a bench seat in it, and he leaned over the bench seat as he was accelerating and trying to leave. And my client was between his car, which he had put in front of Mr. Cron's vehicle to try to keep Mr. Cron from leaving, and Mr. Cron's vehicle in a zone of danger where he could have easily been hit by the car. What the court decided below and what the plaintiff points out in their brief is that the entire truck had not passed, and we agree with that for the purposes of this argument. But the plaintiff goes on to say, unless the truck suddenly and unexpectedly lurched, that my client wasn't in danger. Well, the truck, by definition, could suddenly and unexpectedly lurch. In turn, it has a steering wheel. It has an accelerator. And so, Mr. Cron has If the judge company ever had to look at it in the light most favorable to the other side, the facts I agree. Which you accept. I do. You accept that version of the facts. You don't contest any facts here. I don't contest any facts in this case. You don't contest any facts enumerated by Judge Kovner. You don't question his version of the facts. For the purposes of this motion, correct. Well, for the purposes of this appeal, you don't. Yes, for the purposes of this appeal, correct. Let's say that the first shot, you might get qualified immediately. But the focus on the second shot, when he's beside the vehicle and fires. Sure, Your Honor. The first shot and the second shot, first of all, were in rapid succession. And everybody agrees as to that. The trooper didn't have a long time to reflect. And you accept that the plaintiff was hit by the second shot? Correct, Your Honor. Your Honor, the first shot went over the truck is what's believed. It was shot toward the grill. The bullet was never recovered. And then the vehicle continued to move. But for the facts we have to take here, he was hit by the second shot, which entered on the passenger side window. Correct. Which would indicate that the officer, your client, is off to the side of the vehicle  He is off to the side of the vehicle. And what the witnesses said was that my client was stepping toward his right as he shot. The vehicle that Mr. Crine was driving ends up turning and squeezing through. It turns to the left after he shot. And it squeezed through, kind of idling, between my client's vehicle and the innocent bystanders who were parked beside Mr. Crine. And so my client was moving in the same direction that the vehicle was moving, essentially, while he was trying to get away from being run over. And he did shoot from the side. He had to have shot from the side in order for that bullet to go through the passenger side window. However, my client is still in the zone of danger. He's within feet of the car at the time he shot. And all it would have taken, as Mr. McKinney, one of the witnesses in the case, said, he shot the gas to it. That was what Mr. McKinney's words. He had shot the gas to it. He could have easily run over my client at the time that he shot my client. He could have also turned the wheel and hit my client, or he could have turned the wheel and hit my client's partner who was on the other side of him. Yes, Your Honor. Aren't you overlooking some facts about what the surrounding was with Mr. McKinney there? Had his two children in the car with him. Mr. Jett was a bystander. And as I read the record, Mr. Krine was racing back and forth. And he ran into the fuel pumps, which if that kept up, he could have erupted those fuel tanks and had a disaster there if a fire broke out. Absolutely, Your Honor. This was a tense, rapidly evolving situation. Mr. Krine rammed a diesel pump that was behind him. He rammed my client's cruiser that was in front of him. There were, you know, this is an old country store with an island of gas pumps to the right of Mr. Krine as well that were within him being able to turn the wheel and hit him. And my client is in that fatal triangle between Mr. Krine's vehicle, his own vehicle that he used to try to keep Mr. Krine from moving, Mr. McKinney's vehicle that is parked parallel to Mr. Krine's pointing out towards the main road as well. And so Mr. Krine's own conduct is what caused this. And my client had, you know, under Waterman, Waterman would have precluded my client from shooting Mr. Krine if he had pulled out and my client was no longer in the zone of danger. But that isn't the situation as determined by the district court. My client was beside or very near the passenger side window so the plaintiff could have easily turned his wheel and hit my client had he hit the gas. Do you know the distance that Mr. Kline was trying to drive his car through between the trooper's truck and Mr. Jett, who was a bystander? In what distance? We don't know the exact distance because after the shot was fired, Mr. Krine's vehicle pulled out into the roadway, which is approximately 100 feet away, and the trooper's vehicle pulled, they're 30 miles probably from the nearest ambulance, the trooper's vehicle pulled out to block traffic so that Mr. Krine wouldn't be further injured. So we don't have any measurements like you would expect. But what we do know is that by everyone's account, Mr. Krine's vehicle barely made it between the trooper's vehicle and it's Mr. McKinney's vehicle that's to the left of Mr. Krine's vehicle. And my client testified that he was approximately, that there was about six feet when he originally pulled up between his vehicle and the front of Mr. Krine's vehicle. My client pulled up at an angle, and the plaintiff was able to get out through that angle after he was shot that allowed a little bit of extra bumper up there on the bumper of my client's vehicle. Well, this was a rapidly evolving situation, and really the second shot was just one event. The shots were rapidly, one after the other. I completely agree, Your Honor, and that's what the testimony is here, and that's what the court's not supposed to do is to come back in here and Monday morning quarterback this thing and start to think, well, if my client was able to call a timeout and get out a protractor and a compass and a tape measure and determine the accelerating speed of the vehicle that Mr. Krine is driving, he didn't have that opportunity. He had to make a split-second decision. Am I going to get run over? Is my partner going to get run over? And he made that decision, and this court shouldn't Monday morning quarterback that. And the Waterman decision definitely didn't instruct my client that when he was on the side of that vehicle, still in the zone of danger, that he could not shoot. Now, we agree, had Mr. Krine pulled on out and started going away, my clients couldn't have shot at that time, but that's not the facts before this court. It was my client right beside him. It sounds like you're challenging the facts that Judge Copenhaver set forth. I'm not, Your Honor. Absolutely not. Judge Copenhaver found that my client... here and assesses whether your client's entitled to qualified immunity or whether there has to be a trial. I mean, if you have a trial, a lot of this stuff, you may win a trial anyway. But the question is whether the case has to go to trial, whether he's entitled to qualified immunity. And that brings up a clearly established issue that you said you were going to... that the right was not clearly established. That's the right against use of excessive force? Well, obviously the right against the use of excessive force is clearly established, but the court has to... it doesn't have to have every single fact before it and make every single decision. But what Waterman provided was that a police officer cannot shoot a suspect after he has fled and the suspect is no longer posing a danger to the police officer. That's not what we have here. We have a situation where the plaintiff is directly, you know, very close to the trooper. The Supreme Court said that a reasonable officer is entitled to use deadly force where the officer has probable cause to believe that a suspect poses a threat of serious physical harm either to the officer or others. Tennessee v. Garner. Probable cause. You're saying your man had probable cause? You're speculating that maybe he could have turned this way or that way or something. Absolutely. Is that probable cause? Absolutely had probable cause. He had probable cause. He knew... That's what you're saying. He knew that this person was wanted. So you say it fits in there. It fits in there. He knew this person was wanted. He knew this person had previously tried to run over a different police officer. This person had rammed his... my client's cruiser. This person had rammed the diesel pump behind him. I know with all that, but your argument that your officer may have been hit by the truck was that he could have turned toward him. My officer doesn't know... So you have to... probable cause that he's going to turn toward your man before he gets shot. My officer doesn't have the opportunity to determine... Well, he shot through the passenger side window. So he's got to turn right on which make a U-turn to get back to where you're planning to stand. Well, my man is moving toward the passenger window himself trying to get away as the vehicle is moving out. So they're moving in the same direction. He's trying to make sure that when this guy makes the turn or tries to make a turn that he's not going to pinch my guy in this fatal triangle, the pinch point between my trooper's vehicle and Mr. Krine's vehicle. So he's trying to get out from behind his own vehicle so he won't get pinched there. So they're moving in the same direction when the shot's fired. But he's still in that zone of danger, and I still believe he had probable cause to believe that he could be run over. He didn't have a chance to determine is this guy going to make a turn. It's not like he was parallel parking where you hope you don't hit the vehicle in front of you or behind you. This guy's coming out of there, and he's coming out of there quick after he's disobeyed the police officers, and he's backed into a fuel pump, and he's hit the trooper's vehicle as well. I see that I am almost out of time. You are out. I am out of time. I didn't mean to cut you off mid-sentence, but I was just commenting on the red light is on. The red light is on. That means your time's up. Thank you, Your Honor. The yellow is when you're almost out. Thank you. Yes, ma'am. Ms. Garlow. Good morning, Your Honors. May it please the Court, Rochelle Garlow on behalf of the appellee, Mr. Krine. In order for Judge Copenhaver to have granted qualified immunity, he would have had to determine that based on all of the evidence available to the Court in deciding the motion for summary judgment, that a reasonable officer would have believed it legal and necessary to shoot Stephen Krine, and because of Tennessee v. Garner, that means the evidence would have to suggest the officer reasonably believed himself or others to be in danger. Clearly, what he was trying to avoid was Mr. Krine's escape. He was not, I'm a little confused about counsel's statement that they were moving in the same direction. Obviously, my client's vehicle was moving forward while Trooper Price was moving to the side. He was out of the way. He fired a shot through the window to avoid Mr. Krine being able to pull out through that opening, and I would point out to the Court that after he had been shot, his vehicle drifted unimpeded through the very opening he was intending to go through to escape. You say they weren't moving in the same direction? No, no, Your Honor. So you say that he has misstated the facts in that regard? I don't see how. If the officer's in the front of the truck where he says he was in danger of the path of the truck, and he moves to the passenger side of the vehicle while my client is driving forward, those are opposite directions. But again, we don't have to determine the facts. We don't have to go back and decide who was standing where. Judge Copenhaver, our district court judge, could not, from the facts presented to him, make a determination that he acted objectively reasonably. And the Waterman case, talking about the vehicle not having passed completely, he was at the side of it at the time he fired that shot. In order to still be in danger, as Your Honor, Mr. Judge King said, he would have basically made a U-turn to hit him unless the entire truck moved sideways, jumped sideways. I'm not talking about a quick turn to the side. I'm talking about the entire vehicle moving sideways, which is a physical impossibility. This court has already had an issue. Well, your man was trying to get away. He was trying to get away. And he was backing into fuel pumps. He did bump fuel pumps. Yes. And he did bump the door of the cruiser in front of him. But in the record, the evidence of the state police report was that he bumped it with just enough force to shut the door. He did not ram it or try to ram the car. He bumped it with the force needed to shut the door. He knew these fellas had warrants for him. Yes, misdemeanor warrants. That's important here as well. Every charge for which he was being sought was misdemeanor warrants, all of which have been since dismissed. And this court in Pena v. Porter had stated that the lower court in that case was not convinced by the facts that the officer's actions were reasonable. This court has made that same determination. He cannot tell from the facts that a reasonable officer in Trooper Price's position would have made that decision. It's notable that there was a police officer, ostensibly a reasonable officer, on the other side of the truck at the driver's side door who didn't make the decision to shoot to protect any person on the lot. The officer says that Mr. Kline leaned over into the driver's seat. He was shot in the right side of the head, through the passenger side window into the right side of the head. If he was leaned over, that seems to be even a bit more difficult of a shot to make. So I think that's another disputed fact. It is. And Judge Copenhaver, in viewing it in the light most favorable to my client, could not find that Trooper Price had a reasonable belief that he was in danger when he fired that shot. And I think that's the crux of this case, is that it was through the passenger side window. No, the entire vehicle had not. Yes, Your Honor. Do you think Judge Copenhaver erred in analyzing subjective motivation on the part of the trooper? No, Your Honor, because he was looking at Tennessee v. Garner. Tennessee v. Garner plainly states that it is to be determined by objective reasonableness, not by subjective motivation. Yes, Your Honor, but Tennessee v. Garner stands for the proposition that you cannot shoot a fleeing suspect unless you believe they are in danger. The defense here is that it wasn't to keep him from fleeing. We were in danger. So to completely ignore the officer's intentions, I would point the court then to Roland v. Perry, which points out that the officer's perception of objective facts are relevant to this determination. And that includes, in this case, the fact that Trooper Price, as stated by counsel, was aware of Mr. Crine's reputation for fleeing from the police. And in the record, it's something that Judge Copenhaver looked at. Well, that's the application of subjective motivation. Well, but it's been used before, Your Honor, in Sigmund v. Chapel Hill. Police knew the suspect's history in that case. Their knowledge that he had been acting erratically, cutting himself, had threatened his wife recently, was all considered when they analyzed reasonableness. Subjective motivation does not cut out any consideration of what a reasonable officer in that situation, knowing everything that he knew about the suspect, would have done. I don't think it's so broad as to say that an officer's knowledge about an individual is completely precluded from analysis. If perhaps we were saying that Trooper Price didn't know Stephen Crine, but perhaps he was black and he was just shooting him because he had a racial prejudice, perhaps we wouldn't be able to get into that. But we're talking about specific knowledge that this officer had or believed that he had about this suspect. And our argument all along has been that Mr. Crine was shot to avoid his escape. Now they say he was shot to avoid danger to the other officers or people on the lot. Are you implying that Judge Copenhaver had the right to discuss and to consider all of the things you're talking about, that this trooper had an encounter with your client before and that therefore he knew all about that and therefore he was using subjective motivation? Is that what you're trying to tell me? Not subjective motivation, Your Honor, but it was part of the circumstances surrounding the incident. An objective officer who knew what Trooper Price knew and had the physical placement of all of the parties involved, knowing all of that, comes to the conclusion that an objective officer, he cannot come to the conclusion that an objective officer would have made that decision. Roland v. Perry and Sigmund v. Chapel Hill are both cases in which what an officer knew about a suspect was considered relevant to the analysis of what an objective officer who knew those things, faced with that situation, would have done. This Court has already said that we must accept Copenhaver's determination of the facts as he placed them in there. There is ample evidence in the record. Trooper Price's statement afterwards was very clear that my client was trying to get away. He was trying to get out. He knew that he was trying to flee. He had no reason to think that he was in danger when he was standing to the passenger side of the truck. My client lived through this shooting. I don't know if that's a fortunate fact or not, because his life quality is not great at this point, obviously, a shot to the head. Hunter v. Bryant, qualified immunity protects all but the plainly incompetent and those who knowingly violate the law. To know if he's violated the law, we look not simply to Waterman, but to Tennessee v. Garner. And you can't ignore an analysis of whether or not a suspect has been shot because he is fleeing. Otherwise, there would be no need for the ruling in Tennessee v. Garner, which has never been overruled. We can never look to whether or not an officer has shot a suspect because they are fleeing. If we have to only look at the physical facts there without knowing what the officers knew about the suspect, we're missing a very relevant objective, objective factor. Just because Trooper Price knew these things in his head doesn't mean that you can't consider what would an objective, what would an officer have done with that same knowledge and a reasonable officer in the very same position. Yes, sir. Under your circumstances, what do you think this trooper should have done? Unfortunately, he was going to have to let Trooper, or let Stephen Price get, Stephen Crine get away again. And then he had gotten away several times in the past, according to their, their report. But when he shot him, he hadn't gotten away at that point, had he? He was about to. And that, again. Well, that's not my question. You're relying on Tennessee v. Garner. He had not gotten away at that point. And he'd been backing his car up and forward and coming forward and going back to hit the fuel pumps and so forth. What makes you think the trooper thought that he was going to be able to get through that narrow space? At that point, he had not. He was not. He was not fleeing. He hadn't passed the trooper. Trooper Price's own statement was that he was, that Stephen Crine was trying to get away. He was going to get out. He was going to go out through that opening. He knew that. Not only did he expect that that's what's going to happen, but even when he was unconscious and unable to control his vehicle, it rolled right through that opening, did not bump anything, and went onto the roadway. He had positioned his truck through a series of K turns, which accounts for the forward and the backward, in such a way that he was going to make his escape. At that point, Trooper Price made sure he did not escape. And again, he says he was leaned over in the seat, but he was shot in the right side of the head. The first bullet by Trooper Price's own admission was an excited shot. His hands were shaking. He was cold. I'm not even sure that that shot was intentionally fired. I don't think it matters for the purpose of this case, unless the court has further questions. I think that's all that I have. Thank you very much. Thank you. Mr. Mullins? Yes, quickly, Your Honor. Two things that I think are important to note. On page 13 of Judge Copenhaver's opinion, he talks about Trooper Price's admission that Crine had previously escaped his custody could suggest that a desire to prevent a similar escape, rather than the fear of harm, motivated Trooper Price's actions. And what we believe is the error here is that the court is talking about a subjective motivation. It even uses the term motivation in that passage, and that is in the brief. That same analysis is in the judge's order multiple different times. We think that the court looked beyond the objective facts of what an objective, reasonable officer would have done and tried to get into Trooper Price's head to determine if Trooper Price had some other motivation, and we think that that's an error under Roland v. Perry. What about his statement where he says that he believed he was trying to flee? I don't believe that that's exactly what he said. He did say that he thought that he was in danger, and that's pointed out in the court's order as well. As to the second shot, I'll give you the first one. Even if it hit him, I could probably get by with that. But it is proper for a jury to make that determination whether he was shot because he's fleeing or because the trooper was in danger. I think that it's not, Your Honor, and here's why. The court determined the operative undisputed fact in this case was that Trooper Price would have been at or near the passenger side of the truck when the second shot was fired into the window. That's on page 6 of the court's memorandum opinion. Being at or near the passenger side of the truck doesn't put you out of the zone in danger. He had not passed Trooper Price at the time that he shot, like in the Waterman case where there was no longer danger. On page 13, the undisputed fact that Trooper Price fired the second shot through the truck's passenger window tends to indicate that the trooper was not in the vehicle's direct path. He does, Your Honor, but not being in the vehicle's direct path and being beside the vehicle or if the vehicle makes a determination it's going to turn are two different things. And you're sitting here now in the peace of the court's chamber trying to figure out if he was going to get hit or if he was not going to get hit, but Trooper Price didn't have the opportunity to think that through and to do the measurements. He's standing there. This guy's pulling out. He's hit a gas pump. He's hit his vehicle. The trooper's trying to get out of the way of the vehicle. It's not past him yet, and he shoots. And I believe that he's entitled to qualified immunity under those circumstances. He's not in the vehicle's direct path. You've got to have probable cause to believe he's going to make a right-hand turn. It sounds like. He was making a left turn. Well, but it's in the right. The way that he characterized the undisputed fact, he fired through that window, got the guy in the head, the passenger window. So he must not have been on a seat unless he was hitting the top of the head. He said he was hitting the side of the head. He was hitting the side of the head, Your Honor. Well, he must have been sitting up under the wheel. If he's in the path, you're in pretty good shape, as Judge Boyd said. But shooting through the passenger window is what kind of got you in a box. But talking about in a box is exactly where my client was. You may win the case anyway. As I said, these cases are difficult for plaintiffs to win over in West Virginia. But people got a lot of respect for the state police officers. You're probably in pretty good shape anyway. The only question is whether he gets qualified immunity when he shot this guy through the passenger window as he was trying to get away. And you talk about being in a box. My client's in a box. He's boxed in by his vehicle and a vehicle coming that way. You've got your case in a box on an immunity claim. I'm saying, as I've said, you may well win the case anyway when you go to trial. The question is whether Judge Copenhaver erred in denying him qualified immunity. And you have a right of appeal on that, immediate appeal. The exception to all the appellate rules is to let you come up or the jurisdictional rules to let you come up here because the police officers and government officials are entitled to have these immunity claims determined early. But there are strict rules that govern our assessment of them. Understood, Your Honor. And, again, we believe that my client was still in the zone of danger. He may not have been standing directly in front of the vehicle, but he doesn't know if that guy's going to turn his wheel and hit him. He doesn't know if he's going to hit the gas and hit him with the rear of the truck as he comes out. He doesn't know if he's going to hit the trooper's vehicle as he's leaving and cause the trooper's vehicle to hit my client who was standing in front of it. So we believe he was in the zone of danger. The danger had not passed. This would be a completely different situation if Mr. Criant had pulled on out and my guy started firing at the back of his vehicle as he was fleeing. But that's not what the court found, and that's not what the facts show. And that's why we believe we're entitled to qualified immunity. Thank you very much. Thank you. We appreciate it, Mr. Bolland.
judges: Robert B. King, Henry F. Floyd, Clyde H. Hamilton